UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID PICKUP**, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **JOSEPH R. BIDEN, JR.**, <br> *in his official capacity as President of the United States, et al.* <br><br> Defendants. | Case No. 1:22-cv-00859 (TNM) |

**MEMORANDUM OPINION**

This case involves a *pro se* challenge to two pending pieces of federal legislation. Plaintiffs—a psychotherapist, four pastors, a lobbyist, and a lawyer—sued President Biden and several members of Congress alleging sweeping constitutional violations. At bottom, they ask this Court to declare unconstitutional, and enjoin the passage of, two pending bills. The Government has moved to dismiss. Because the Court finds that it lacks jurisdiction, it will grant the Government's motion.

**I.**

Plaintiffs are pro-life lobbyists, pastors, a lawyer, and "ex-gays" who run organizations providing "therapeutic services" for people who wish to become heterosexual and convert to Christianity. *See* First Am. Compl. (Compl.) ¶¶ 75–77. They sue President Joseph Biden, Senators Jeff Merkley and Richard Blumenthal, and Representative David Cicilline[1]

---

[1] Plaintiffs also initially sued House Speaker Nancy Pelosi, Senate Majority Leader Charles Schumer, and Senator Richard Durbin. *See* Compl. ¶ 1. Later, they decided that these defendants were not "necessary parties" and voluntarily withdrew their claims against them, citing Federal Rule of Civil Procedure 41. Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Pls.' Opp'n) at 36 n.65, ECF 59. "Although [Plaintiffs] failed to file a separate motion to dismiss the claim[s], the Court construes the statement in [their] Opposition as a motion under Federal Rule

(collectively, the Government) arguing that two pending pieces of federal legislation—the Women's Health Protection Act and the Equality Act—are unconstitutional. *See id.* ¶¶ 1, 78–84. The Women's Health Protection Act would guarantee healthcare providers "a statutory right . . . to provide abortion services." S. 4132, 117th Cong. § 3(a) (2022). The Equality Act would add protections for sexual orientation and gender identity to the Civil Rights Act of 1964. *See* H.R. 5, 117th Cong. (2021); S. 393 117th Cong (2021).

Neither bill has become law.[2] Even so, Plaintiffs ask this Court to declare both facially unconstitutional (primarily under the First Amendment's Establishment Clause) and enjoin their passage. *See* Compl. ¶ 181. Plaintiffs request other relief too. In their view, the Supreme Court's decisions in *Roe v. Wade* and *Planned Parenthood v. Casey* undermine the Establishment Clause by promoting the religion of "secular humanism." *Id.* ¶¶ 9–10, 20. According to Plaintiffs, secular humanism includes a "pro-abortion" denomination and an "LGBTQ" denomination. *See id.* ¶¶ 33–35, 181. Plaintiffs thus argue that the Government violates the Establishment Clause if it promotes abortion or LGBTQ ideology. *See, e.g.*, *id.* ¶¶ 1, 181. They also ask this Court—among other things—to (1) declare anything they describe as government support for secular humanism unconstitutional; (2) proclaim secular humanism a "disfavored religion"; (3) rule that the Supreme Court wrongly decided *Obergefell v. Hodges*, *United States v. Windsor*, and *Bostock v. Clayton County*; (4) hold that various state bills they

---

of Civil Procedure 41(a) and will dismiss" their claims against Speaker Pelosi, Leader Schumer, and Senator Durbin. *Accord Spector v. District of Columbia*, 17-cv-01884, 2020 WL 977983, at *5 (D.D.C. Feb. 28, 2020).

[2] The Equality Act has passed the House. *See* 167 Cong. Rec. H660 (daily ed. Feb. 25, 2021) (vote on H.R. 5).

have proposed are constitutional; and (5) proclaim "that America is unofficially a Christian Nation." *Id.* ¶¶ 1, 136, 181.

Before the Court is Defendants' Motion to Dismiss. *See* Mot. to Dismiss (Defs.' MTD), ECF 54. Defendants ask the Court to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and want of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See id.* at 1. Because the Court finds it lacks jurisdiction, it will grant the Government's motion.[3]

## II.

Under Rule 12(b)(1), this Court presumes it lacks subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal courts have limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute." *Id.* Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering whether it has jurisdiction, a court "treat[s] the complaint's factual allegations as true . . . [and] grant[s] [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).

Because Plaintiffs represent themselves, the Court "liberally construe[s]" their filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court therefore considers all of their filings, including their voluminous declarations, *see, e.g.*, ECF Nos. 44–50, and their motions to take judicial notice, *see, e.g.*, ECF Nos. 37, 38, 54, 56. But the special solicitude afforded to *pro se* litigants does not permit Plaintiffs "to ignore the Federal Rules of Civil Procedure." *Oviedo v.*

---

[3] Because the Court will dismiss Plaintiffs' Complaint under Rule 12(b)(1), it need not reach Defendants' 12(b)(6) arguments. *See Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 424 F. Supp. 3d 26, 30 (D.D.C. 2020), *aff'd*, 848 F. App'x 428 (D.C. Cir. 2021).

*WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020); *see also Raven v. Sajet*, 334 F. Supp. 3d 22, 28 (D.D.C. 2018) (noting that for *pro se* plaintiffs, "the ultimate standard remains the same"), *aff'd,* 2019 WL 2562945 (D.C. Cir. May 17, 2019) (per curiam).

### III.

Opposing a Virginia bill that would establish a tax to support religious teachers, James Madison wrote: "We maintain therefore that in matters of Religion, no mans right is abridged by the institution of Civil Society[.]" James Madison, *Memorial and Remonstrance Against Religious Assessments* ¶ 1. And when designing the Constitution three years later, Madison wrote: "the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself." The Federalist No. 51, at 319 (James Madison) (Clinton Rossiter ed., 1961). His solution protected freedom, including freedom from established religion, by requiring the "separate and distinct exercise of the different powers of government." *Id.* at 318.

But these two Madisonian principles are in tension in this case. On one hand, Plaintiffs claim that Congress is poised to establish the "secular humanist" religion. *See generally* Compl. They say this puts their freedom to live according to their consciences at risk. *See id.* On the other hand, the Government responds that our constitutional structure, which divides power into three branches and circumscribes the federal judiciary's power, prevents the Court from hearing this case. *See generally* Defs.' MTD.

The Court agrees with the Government. The Speech or Debate Clause bars Plaintiffs' claims against the congressional Defendants, and bedrock separation of powers principles bar their claims against the President. Nor do Plaintiffs show that they have standing.

## A.

The Speech or Debate Clause bars Plaintiffs' claims against the congressional Defendants. The Clause emerged from the decades-long English struggle for parliamentary supremacy over the King. *See generally Schilling v. Speaker of U.S. House of Reps.*, No. 22-cv-162, 2022 WL 4745988, at *2–7 (D.D.C. Oct. 3, 2022) (reviewing the Speech or Debate Clause's history). It provides: "[F]or any Speech or Debate in either House, [Representatives and Senators] shall not be questioned in any other Place." U.S. Const. art. I § 6.

The Clause "applies not just to speech and debate in the literal sense, but to all legislative acts." *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021). Speech or Debate Immunity extends "to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). It applies "even though [the] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973). And courts are to apply the clause "broadly to achieve its purposes"— one being the protection of "legislative acts" from judicial intervention. *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015)

Plaintiffs ask this Court to force "Defendants to table the Equality Act, the Women's Health Protection Act, and all similar policies in perpetuity." Compl. ¶ 181. But the Court is hard-pressed to imagine a more "legislative act" than considering a bill. Indeed, the consideration of legislation is "an integral part of [Congress's] deliberative and communicative process." *Gravel*, 408 U.S. at 625. So the Court finds that the Speech or Debate Clause bars all Plaintiffs' claims against the congressional Defendants.

Plaintiffs levy a few counterarguments, all unpersuasive. Plaintiffs argue that various acts—including a letter sent to President Biden and the President's public statements—vitiate the

5

congressional Defendants' Speech or Debate immunity. *See* Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Pls.' Opp'n) at 36–40, ECF 59. But Plaintiffs cite no authority—nor is the Court aware of any—that public statements by Defendants defeat the Constitution's sweeping grant of immunity for legislative acts. Indeed, contrary authority exists. *Cf. Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 519 (D.D.C. 2021) (holding that the Clause protects letters sent by a congressman that have a connection to a legislative act). Plaintiffs also try to posit that the Fourteenth Amendment incorporates the Speech or Debate Clause and that the Tenth Amendment "trumps" the Speech or Debate Clause. *See* Pls.' Opp'n at 50. But Plaintiffs cite no relevant, persuasive authority in support of those claims. The Court therefore must dismiss Plaintiffs' claims against the congressional Defendants for lack of jurisdiction.[4]

**B.**

Next up are Plaintiffs' claims against President Biden for injunctive and declaratory relief. Bedrock separation of powers principles bar these claims, so the Court will dismiss them.

Over one hundred years ago, the Supreme Court held that it had "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S.

---

[4] Plaintiffs also ask the Court to declare that "LGBTQ ideology is a religion," Plaintiffs' various proposed bills are constitutional, *Roe, Casey, Obergefell, Windsor*, and *Bostock* were wrongly decided and violate the Establishment Clause, and more. Compl. ¶ 181. But the Declaratory Judgment Act, 28 U.S.C. § 2201, only permits courts to issue declaratory judgments when "parties hav[e] adverse legal interests[] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The only relevant adverse legal interest Plaintiffs have identified is Defendants' consideration of the challenged bills. *See, e.g.*, Compl. ¶ 130. If Plaintiffs' declaratory judgment claims are tied to their dispute about the bills, the Speech or Debate Clause bars them. And if those claims are unrelated to the bills, Plaintiffs have simply failed to state a claim for declaratory relief. Finally, Plaintiffs' claims about *Roe* and *Casey* are moot because the Supreme Court recently overruled those decisions in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022).

Case 1:22-cv-00859-TNM   Document 62   Filed 11/30/22   Page 7 of 14

475, 498 (1866). And the Court reiterated that rule more recently in *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality opinion). In *Franklin*, the Court explained that injunctive relief against the President is such an "extraordinary" remedy that it should "raise[] judicial eyebrows." *Id.* at 802–03 (cleaned up); *see also id.* at 826 (Scalia, J., concurring in part and concurring in the judgment) ("I think it clear that no court has authority to direct the President to take an official act.").

The D.C. Circuit agrees: "A court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). Granting such relief would "create[] an unseemly appearance of constitutional tension and at worst risk[] a violation of the constitutional separation of powers." *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996). Indeed, Plaintiffs seek to enjoin, and declare unlawful, the routine signing of two pending pieces of legislation. It does violence to the separation of powers to suggest that citizens could preemptively sue to enjoin, or declare unlawful, the President's signing of a bill.

Plaintiffs protest that they merely "challenging policies," not seeking to direct the President's actions. *See* Pls.' Opp'n at 29 n.51. But Plaintiffs seek only equitable relief, and such suits are *in personam*. *Smith v. Bd. of Comm'rs of D.C.*, 259 F. Supp. 423, 424 (D.D.C. 1966), *aff'd*, 380 F.2d 632 (D.C. Cir. 1967). In other words, the relief sought must pertain to the Defendants whom Plaintiffs sued. *See id.* ("[E]quity does not enjoin unnamed individuals[.]"). And in any event, Plaintiffs may not use the federal courts to challenge government policymaking absent an actual legal dispute. *See, e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (explaining that courts cannot address "abstract, intellectual problems" but only

7

"concrete, living contests between adversaries"). The proper way for Plaintiffs to effect policy change is through the legislative process itself, not by suing in this Court.

For these reasons, basic separation of powers principles bar Plaintiffs' claims for declaratory and injunctive relief against President Biden.

### C.

Even if the Speech or Debate Clause and the separation of powers did not bar Plaintiffs' claims, the Court also finds that Plaintiffs lack standing to sue. This is a second justification for dismissal.

Article III limits the federal judiciary to deciding cases and controversies. *See* U.S. Const. art. III, § 2. The requirement that plaintiffs have standing is bound up in this core limit on judicial power. *See, e.g.*, *Simon v. E. Ky. Welfare Rts., Org.*, 426 U.S. 26, 37 (1976). To show standing, Plaintiffs must demonstrate that they have (1) "suffered an injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) that the injury is "fairly traceable to the challenged action of the defendant," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (cleaned up). Federal courts have an independent duty to satisfy themselves that Plaintiffs have standing. *See Cierco v. Mnuchin*, 857 F.3d 407, 415–16 (D.C. Cir. 2017).

### 1.

Plaintiffs fail to show that they have Article III standing. First up is the requirement that they plead a concrete and particularized injury. *See Lujan*, 504 U.S. at 560–61. Plaintiffs allege many injuries. They say the bills injure them by preventing them from offering conversion therapy and discouraging women from having abortions, which causes their businesses economic

harm. *See, e.g.*, Compl. ¶¶ 55–56, 60 n.72, 65; Pls.' Opp'n at 19–21. And they say that the bills require them to perform abortions, hire gay or transgender people, inhibit advocacy of legislation they support, and limit the Religious Freedom Restoration Act (RFRA)'s protections. *See, e.g.*, Compl. ¶¶ 50, 52.

Several of these injuries are not concrete or particularized. For starters, Plaintiffs do not plead facts to show how exempting the bills from RFRA injures them. *See, e.g.*, *id*. ¶¶ 50, 52; Pls.' Opp'n at 20. And in any event, generalized grievances affecting many citizens cannot establish standing. *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The RFRA-exemption argument is one such generalized grievance. As to their argument that the bills require them to perform abortions, no Plaintiff alleges he is a doctor who could perform abortions if ordered. *See* Compl. ¶¶ 72–77. And Plaintiffs' claims that the bills force them to hire gay or transgender individuals are also unsupported by the record. True, the Equality Act would amend the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to explicitly forbid employment discrimination based on sexual orientation or gender identity. *See* H.R. 5, 117th Cong. § 3(a)(1) (2021); S. 393 117th Cong. § 3(a)(1) (2021). But the Supreme Court has held that the current Civil Rights Act already prohibits that discrimination. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1743 (2020). The Equality Act, if passed, would likely not change Plaintiffs' employment obligations.

Plaintiffs also contend that Defendants' actions chill their speech. *See, e.g.*, Compl. ¶¶ 125, 127, 137, 142; Pls.' Opp'n at 44–45. But they do not explain how that is so. A bare allegation of chilled speech is not enough for standing for a pre-enforcement—indeed, pre-enactment—challenge. *See Woodhull Freedom Found. v. United States*, 948 F.3d 363, 371 (D.C. Cir. 2020); *see also Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 317 (D.D.C. 2018)

(explaining that conclusory statements are insufficient for standing in action brought by one of the same plaintiffs as here).

Puzzlingly, Plaintiffs' main counterargument to the Government's motion to dismiss for lack of standing is that they need not plead a concrete and particularized injury in an Establishment Clause case. *See, e.g.*, Pls.' Opp'n at 14–18. Not so. Plaintiffs appear to have confused the idea that a First Amendment violation is per se irreparable injury under the preliminary injunction test with the injury requirement for Article III standing. *See id*. But the injunction inquiry presupposes "that a party has standing to allege such a violation." *In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008) (Kavanaugh, J.) (cleaned up). And Plaintiffs cite no case, nor does the Court know of any, holding that the bare allegation of an Establishment Clause violation is per se a concrete and particularized injury.

Out of options, Plaintiffs declare that their fear that the bills would injure them is good enough, invoking *Friends of the Earth, Inc. v. Laidlaw Environmental Services*. *See* Pls.' Opp'n at 43–45. But in *Friends of the Earth*, plaintiffs argued that they were not benefiting from the "aesthetic and recreational values" of the North Tyger River because they were concerned about Laidlaw's discharges. 528 U.S. 167, 182–83 (2000). Those plaintiffs offered specific testimony that they would use the river were it not for Laidlaw's unlawful conduct. *Id.* at 184. But Plaintiffs here do not allege that some threat of harm is causing them to give up a good they would otherwise avail themselves of, beyond the conclusory allegation that Congress's consideration of these bills chills their speech. *See generally* Pls.' Opp'n. Even if *Laidlaw* extends beyond environmental harms, Plaintiffs have not alleged a cognizable fear-based injury.[5]

---

[5] Plaintiffs also claim similar injuries from Executive Order 14,075 in their Opposition. *See* Pls.' Opp'n. at 34. But all Plaintiffs allege about the Order is that "[t]he policies chill the Plaintiffs' speech in a manner that causes them to lose income and is harmful to the health and

10

Now for the actual or imminent requirement. Plaintiffs have also not shown that any relevant injury is actual or imminent. If an injury has not yet occurred, it must be "certainly impending or immediate" to satisfy Article III's requirements. *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007). Plaintiffs have not shown that either bill's passage is "certainly impending." *Id.* Indeed, neither bill has even passed the Senate, and proposed bills die all the time.

But Plaintiffs do discuss one injury that seems both concrete and particularized and actual and imminent: violence against pro-life organizations and activists that followed the leak of the Supreme Court opinion in *Dobbs v. Jackson Women's Health Organization*. *See* Compl. ¶¶ 62, 103–06. But Plaintiffs do not claim that *they* have been the victims of violence or threats in reaction to *Dobbs*. *See generally* Compl. Plaintiffs normally must assert "their own legal rights and interests" rather than "the legal rights or interests of third parties." *Bronner v. Duggan*, 364 F. Supp. 3d 9, 18 (D.D.C. 2019), *aff'd sub nom. Bronner ex rel. Am. Studs. Ass'n v. Duggan,* 962 F.3d 596 (D.C. Cir. 2020).

In any event, Plaintiffs have not pled a fairly traceable or redressable injury. Defendants contend that the harms Plaintiffs allege are neither fairly traceable to Defendants' actions nor redressable by this Court. *See* Defs.' MTD at 13. Plaintiffs do not respond to this argument other than by stating in conclusory fashion that their alleged injuries are traceable to Defendants' conduct. *See* Pls.' Opp'n at 18. So the Court treats the third element of standing as conceded. *See CD Int'l Enterprises, Inc. v. Rockwell Cap. Partners, Inc.*, 251 F. Supp. 3d 39, 46 (D.D.C.

---

welfare of their clients who seek their help." *Id.* While the Order does condemn conversion therapy, its only legal effect is to instruct the Secretary of Health and Human Services and the Federal Trade Commission to consider working to discourage the practice. *See* Exec. Order No. 14,075, 87 Fed. Reg. 37,190 (June 21, 2022). Plaintiffs fail to plead facts showing how the Order harms them.

2017). Even if Plaintiffs had responded, the Court finds that attempting to redress their alleged injuries would raise substantial separation of powers concerns. Effectively, Plaintiffs ask this Court to interfere with the ongoing democratic process. But interrupting a co-equal branch of government during the legislative process would be an act "utterly foreign to our system of divided powers[.]" *Hastings v. U.S. Senate*, 716 F. Supp. 38, 41 (D.D.C. 1989), *aff'd*, 1989 WL 122685, at *1-2 (D.C. Cir. Oct. 18, 1989) ("[W]e have not found any case in which the judiciary has issued injunctive or declaratory relief intercepting ongoing proceedings of the legislative branch.").

Plaintiffs fail to show they have standing under the traditional test.

## 2.

Plaintiffs also argue they have taxpayer standing. Normally, a person cannot challenge a government action purely on that basis. *See Frothingham v. Mellon*, 262 U.S. 447, 480 (1923). The Supreme Court has crafted a narrow exception to that rule for Establishment Clause claims. *See Flast v. Cohen*, 392 U.S. 83, 102 (1968). But that exception has "extremely limited contours." *In re Navy Chaplaincy*, 534 F.3d at 762.

To use the exception, Plaintiffs must satisfy two conditions. First, they "must challenge only the unconstitutionality of 'exercises of congressional power under the taxing and spending clause of Art. I, § 8.'" *Penkoski v. Bowser*, 486 F. Supp. 3d 219, 229–30 (D.D.C. 2020) (quoting *Flast*, 392 U.S. at 102). Second, Plaintiffs must "establish a nexus between that [taxpayer] status and the precise nature of the constitutional infringement alleged." *Id.* at 230. The second part requires that the legislature "expressly authorize[] or appropriate[] funds for" a purpose that allegedly violates the Establishment Clause. *In re Navy Chaplaincy*, 534 F.3d at 762.

Plaintiffs satisfy neither prong. Their main argument is that they "are all taxpayers who pay every form of tax imaginable," and the only appropriation they identify is for Defendants' salaries. Compl. ¶ 60 & n.72. While the Court does not question that Plaintiffs faithfully pay their taxes, they must allege that a *particular* tax or appropriation has a logical nexus with the challenged conduct. *Flast*, 392 U.S. at 102. They do not allege that either bill levies any tax or appropriates any money. *See generally* Compl. Their failure to do so is puzzling because this Court previously dismissed another case brought by some of the same Plaintiffs in part for not showing the requisite nexus for taxpayer standing. *See Penkoski*, 486 F. Supp. 3d at 230. As in *Penkoski*, Plaintiffs here "skip over *Flast*'s threshold requirement: that they challenge a specific *congressional* appropriation or expenditure made under Congress's Article I, § 8 powers." *Id.*

Though Plaintiffs suggest that their payment of Defendants' salaries satisfies taxpayer standing, *see* Compl. ¶ 60, that argument proves too much. Such a broad reading of the taxpayer standing doctrine effectively obliterates the standing requirement in Establishment Clause cases and flouts the exception's narrowness. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 593 (2007) (plurality) (noting the exception's narrowness); *id.* at 616 (Kennedy, J., concurring) (same). The remaining cases Plaintiffs cite assume jurisdiction, *see* Pl.'s Opp'n at 24–25, and thus are not precedential regarding taxpayer standing. *See In re Navy Chaplaincy*, 534 F.3d at 764.

In short, Plaintiffs do not satisfy the more stringent requirements of taxpayer standing.

<p align="center">* * *</p>

Also before the Court are a "Motion to Show Cause for Non-Enforcement of 18 U.S.C. § 1507," ECF No. 32, and a Motion for a Preliminary and Permanent Injunction, ECF No. 27. Because the Court finds that Plaintiffs lack standing to sue, it will deny these two motions. *See,*

*e.g.*, *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) ("[A] party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction.").

**IV.**

For these reasons, the Court will grant the Government's motion to dismiss. Because the Court cannot possibly grant the relief Plaintiffs request—short-circuiting the legislative process, reversing Supreme Court decisions, and enjoining the President's exercise of routine duties—the dismissal is with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (explaining that dismissal with prejudice is appropriate when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency). A separate Order will issue today.

Dated: November 30, 2022                                                TREVOR N. McFADDEN, U.S.D.J.